# JOHN B: HUNTER
## v.
## URBAN B. HARRIS, ADMINISTRATOR.

*Evidence—Promissory Note—Action on by Administrator—Issue as to Genuineness—What may be Shown—Possession—Time and Place of Execution—Evidence Tending to Disprove Execution—Relevancy of—Practice.*

1. Possession of a note declared on is evidence tending to show its delivery. The plaintiff may be permitted to show how long he has had possession of the note to aid the presumption arising from such possession.

2. In an action by an administrator on a promissory note, alleged to have been made to his intestate, the execution of which is denied, the plaintiff may show that the note existed prior to his appointment, among the other papers of the deceased and in the place where he usually kept such papers.

3. While the evidence must correspond with the allegations and be confined to the point in issue, it is not required that it shall bear directly upon the issue. It is admissible if it tends to prove the issue, or constitutes a link in the chain of proof. It is relevant if it conduces to the proof of a pertinent hypothesis.

4. It is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less improbable.

5. Where the genuineness of a promissory note is in issue the defendant may show such facts as would exclude the possibility or probability of its execution at the time and place indicated upon its face.

6. While the date of a note is *prima facie* evidence of the time of its execution, it is not conclusive.

7. Where error has intervened in the trial of a cause, the judgment will be reversed, unless it appears that such error has not affected the result.

[Opinion filed February 17, 1887.]

APPEAL from the Circuit Court of Sangamon County; the Hon. J. J. PHILLIPS, Judge, presiding.

Messrs. ALLEN, BROWN & BROWN and PALMERS & SHUTT, for appellant.

Messrs. PATTON & HAMILTON, for appellee.

WALL, J. This was an action of assumpsit by the appellee

against the appellant to recover the amount of a promissory note for $10,000 alleged to have been made by appellant to Smith, the appellee's intestate, dated March 6, 1880, payable five years after date with six per cent. interest.

The declaration contained a special count on a note and the common money counts.

The pleas were, 1st, non-assumpsit; 2d, a plea especially denying the execution of the note, both verified by affidavit. There was a trial by jury and a verdict for plaintiff for the amount of note and interest. A motion for new trial was overruled and judgment was rendered upon the verdict. The record is brought here by appeal. The points made in the brief of appellant are, 1st, the court admitted improper evidence for plaintiff; 2d, the court excluded proper evidence offered by defendant.

The first point is based upon the admission of the testimony of a daughter of the payee of the note, to the effect that she saw it in his possession, in a pocket book containing other like papers, some two months before his death.

The possession of a note declared on is evidence tending to prove its delivery, and while it is true nothing more on that point is usually required, we see no reason why the plaintiff may not be permitted to aid the presumption arising from such possession by showing how long he had had such possession.

Where a suit is brought by an administrator upon a note alleged to have been made to his intestate and the execution of the instrument is denied, it is certainly competent to show, as a link in the chain, that the plaintiff did not commit the forgery, by proof that it existed prior to his appointment and that it was then among the other papers of the deceased and in the place where he usually kept such papers.

Such proof tends to show that a regular and orderly cause which is consistent with and to be expected in a *bona fide* transaction. It also tends to narrow and fix the period within which the instrument was forged, if ever. The evidence was competent, and there was no error in admitting it.

The second objection is based upon the exclusion of evidence offered by the defendant to prove that on the date of the

note, March 6, 1880, the defendant and the intestate had but one transaction, and that of such a character as to preclude the belief, as is assumed, that the promissory note in suit could have been executed by the defendant or in contemplation by him.

Briefly stated this evidence tends to show that the deceased, who lived in Greenville, Bond County, went to see Hunter at his home, Buffalo, Sangamon County (where the note sued on purports to have been made), for the purpose of getting him to do something on account of past transactions wherein he, Smith, had made many payments as surety for Hunter, who had since then obtained a discharge in bankruptcy.

He stayed at the house of Hunter over night and until time to take the 10 o'clock train the next day, which was the 6th of March, 1880, the day the note sued on bears date.

There was some writing done that morning by Hunter, and the excluded evidence tends to show that the only paper so written was the following:

> "JOHN B. HUNTER, President
> "Western Live Stock Company,
> "Buffalo, Ill., 3–6, 1880.

"W. S. SMITH, Greenville, Ill.

"*Dear Sir:*—I have concluded that, owing to our failure and you having to pay money for our old firm, that I would pay you in 1882 $5,000, provided I don't have to pay any money in on your account to the Bank of Commerce; if so, the amount to be deducted from this amount together with any costs that may accrue.

> "Yours very truly,
> "JOHN B. HUNTER."

Shortly afterward Smith went to the train and returned to his home. After leaving the house and while on his way to the train he said that Hunter had given him this paper obligating himself to pay $5,000, and that while he was not satisfied with the settlement he had settled with him. He made declarations to the same effect on subsequent occasions. This paper was marked "renewed" and bore the indorsement of Smith in his handwriting, which indorsement had been erased.

The evidence also tended to prove that Hunter afterward paid Smith $250, and gave him his note for $4,750, which note was transferred to St. Louis creditors of Smith, pursuant to an arrangement which was under consideration when some of Smith's declarations referred to were made. As we understand it, this paper dated Buffalo, March 6th, and the note of $4,750 were in Hunter's possession, and were by him offered in evidence. Hence it is presumable he had taken them up by payment or renewal, or in some other way satisfactory to the holder. Various items of evidence, such as a letter to Hunter written by Smith asking for money on this agreement, the kind of ink in use at Smith's place of business, and that in which the body of the note sued on was written, etc., which were subordinate to what has been stated and need not be further specified, were also offered and excluded.

It is argued by counsel for appellee that the court properly excluded all this evidence, because the issue to be tried was as to the execution of the note in suit; and that while the facts thus offered in proof may have been true, they in no way tended to prove the non-execution of the note.

It is an established rule, governing in the production of testimony, that the evidence offered must correspond with the allegations and be confined to the point in issue. It is not necessary, however, that it should bear *directly* upon the issue. It is admissible if it *tends* to prove the issue or constitutes a link in the chain of proof, although it might not justify a verdict in accordance with it; but the rule excludes all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute. 1 Greenleaf on Ev., 51, 52, 57a.

Evidence is relevant if it conduces to the proof of a pertinent hypothesis, a pertinent hypothesis being one which, if sustained, would legally influence the issue. It is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less improbable. Whatever is a condition of the existence or non-existence of a relevant hypothesis may be shown, but no circumstance is relevant which does not make more or less probable the proposition at issue. Wharton on Ev., Secs. 20, 21.

The issue was the execution of the note, the plea devolving the burden of proving the allegation as at common law.

There was no doubt proof on the subject, the only evidence being the fact of possession by the deceased, and the opinions *pro et con* of witnesses as to the genuineness of the signature.

The evidence which was rejected tended to show a state of facts somewhat inconsistent with the hypothesis of the plaintiff—to make less probable the proposition asserted by the plaintiff. True, it did not conclusively disprove the execution of the note, but it tended to show a condition of. things from which the non-execution of the note was a reasonable inference. The date of a paper is *prima facie* presumed to give correctly the time of its execution and delivery if it is genuine. Wharton on Ev., Secs. 977, 1312; Abrams v. Pomeroy, 13 Ill. 298.

Surely it is competent to show such facts as would exclude the possibility or probability of its execution at the time and place purported, as, for example, that the supposed signer was then in a physical state that prevented him from writing his name; that he was confined in an insane asylum, or from some other cause was incapable of doing the act in question.

On the other hand it would have been competent for the plaintiff to prove such a situation as would render it natural and probable that the note was made as alleged, for example, an indebtedness sufficient to support it, or an admission of that fact by the defendant and a promise to execute a note for the amount.

In Wharton on Ev., Sec. 20, it is said that where one who is sued on a bill sets up forgery to meet this hypothesis, it is admissible for the plaintiff to prove that at the time the defendant was trying to borrow money. If the hypothesis set up by the defense is fraud, then all facts which are conditions of fraud are relevant.

The business relations of the parties might throw much light upon the question whether the note was probably made.

We are therefore of opinion it was error to exclude the substantial portions of the evidence referred to. It does not follow as a matter of course that plaintiff can not recover because it may appear the note was not executed at the time

and place it purports, but such proof would be proper to consider in determining whether it was ever executed, and might have more or less weight when so considered in connection with all the evidence in the case.

When it appears that error has intervened in the trial of a cause, the judgment will not be reversed if it is clear that, notwithstanding the error, the result would have been the same. It can not be said with any degree of confidence that such would have been the case here.

We do not undertake to decide what might or should have been the conclusion of the jury had the testimony been admitted.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*