DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS,

### DURING THE YEAR 1905.

---

## Joseph G. Ray, Administrator de bonis non, v. John B. Hunter.

1. FINDING OF COURT—*when not disturbed.* The finding of the judge to whom a cause has been submitted for trial without a jury, is entitled to as much weight on controverted questions of fact, as the verdict of a jury, and should not be set aside by an appellate tribunal unless clearly and manifestly against the weight of the evidence.

2. HANDWRITING—*what does not affect competency of witness to.* The fact that a witness who has been subpœnaed to testify to the genuineness of a signature, is, prior to taking the stand, shown genuine signatures of the party whose signature is in question, and is thereby influenced to change his opinion, does not affect his competency to testify to the non-genuineness of the signature in question.

3. INCOMPETENT EVIDENCE—*when will not reverse.* The finding and judgment of the court who has tried a cause without a jury will not be reversed for the admission of incompetent evidence where there was sufficient competent evidence to sustain such finding.

Action of assumpsit. Error to the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1905. Affirmed. Opinion filed October 9, 1905.

D. P. DYER, for plaintiff in error.

ALBERT SALZENSTEIN, for defendant in error.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action of assumpsit, originally instituted by

Ray v. Hunter.

Urban B. Harris, administrator *de bonis non* of the estate of William S. Smith, deceased, against John B. Hunter. The declaration counts upon a promissory note for $10,000, purporting to have been executed by the defendant, at Buffalo, Sangamon County, Illinois, March 6, 1880, and payable to William S. Smith, or order, five years after date, with interest from date at six per cent. per annum. The defendant filed the general issue, and also a special plea denying the execution and delivery of the note sued on, both of which pleas were duly verified by affidavit. The cause has been thrice tried. The first trial resulted in a verdict and judgment for the plaintiff, which was reversed on appeal by this court, for an error of the trial court in the rejecting of testimony offered by the defendant and the cause remanded. (24 Ill. App. 637.) A second trial resulted in a verdict and judgment for the plaintiff for $14,140. The defendant again appealed to this court, where such judgment was affirmed. (29 Ill. App. 200.) The defendant further appealed to the Supreme Court, where the judgment was reversed and the cause remanded for the reason that an instruction was given which it was held calculated to mislead the jury. (131 Ill. 482.) Before the case was tried a third time, the death of the plaintiff, Urban B. Harris, was suggested, whereupon Joseph G. Ray, who had been appointed administrator *de bonis non* of the estate of said William S. Smith, deceased, entered his appearance in the cause, and was substituted therein as plaintiff. The cause was then tried before the court without the aid of a jury, resulting in a finding for the defendant. A motion by the plaintiff for a new trial was overruled and judgment entered upon such finding. To reverse said judgment this writ of error is prosecuted.

While errors are assigned by plaintiff in error involving the rulings of the trial court upon the propositions of law offered by the respective parties, the error chiefly relied upon is, that the finding of the court upon the facts is against the evidence, and the weight of the evidence. Upon the last trial upwards of one hundred witnesses testified,

upon the issue as to the genuineness or falsity of the signature to the note in suit. Some forty-five of them were called by the plaintiff, and about sixty by the defendant. Among these were bankers, merchants and others who had been engaged in, or transacted business with Hunter. Several professional experts in handwriting also testified at length, and with the aid of photographic representations, both actual and enlarged, reproduced upon glass and ordinary plates, of the signature in question and other signatures of Hunter admitted to be genuine and attached to documentary evidence, explained and attempted to justify their respective theories. In connection with their testimony, large and powerful lenses were used, of which the trial court had the benefit.

We have carefully and thoroughly read and considered all the testimony contained in the record, and have inspected the original note and other documentary evidence. After considering such of the oral evidence as is clearly competent, and in the light thereof, and the character, capacity, opportunities and intelligence of the respective witnesses, so far as is shown by the record, we are unable to say that the greater weight of the expert evidence as to the genuineness of the signature to the note in suit is manifestly with the appellant. Neither can it fairly be said that such evidence, when considered in connection with the facts and circumstances attending the entire transaction, clearly tend to show that the signature was that of appellee. It is conceded by counsel for appellant, in argument, that the note was not executed at either the time or place purported by its face, but that if executed by Hunter at all it must have been at a time subsequent to its date. Upon the last, as upon the former trial, there was no evidence given of its execution and delivery at any other time or place, or having a tendency to show that it was or might have been executed elsewhere, or at a different time, nor is there any evidence as to the circumstances under, or consideration for which the note was given. No subsequent meetings or transactions are shown to have been had or taken place be-

tween the parties. In connection with these are the further significant circumstances that Hunter, after his discharge in bankruptcy, was under no legal liability to Harris; that any moral obligation may be considered to have been discharged by the execution and delivery of the $5,000 note, which was afterwards paid in full; and the further circumstance appearing in evidence, that notwithstanding from the time of the date of the note in suit until his death, Harris was in financially embarrassed and straightened circumstances, he made no effort to negotiate or utilize the note as security or in any way to realize upon it. Upon consideration of these facts and circumstances, and in view of the close conflict in the evidence upon the question of the genuineness of the signature to the note, we are impelled to the conclusion that we would not be warranted or justified in holding that the entire evidence so clearly establishes the genuineness and validity of the note as to warrant a reversal of the judgment.

Furthermore, and notwithstanding we have had the benefit of an inspection of the original note and other documents introduced in evidence, we have not enjoyed the superior advantages possessed by the learned trial judge, who not only saw and heard the witnesses while they were testifying, but had, as well, the opportunity to observe the demonstrations of the professional expert witnesses, and was thus better able to understand, appreciate and weigh their testimony. Moreover, it is well settled that the finding of a judge to whom a case is submitted for trial, without a jury, is entitled to as much weight on controverted questions of fact, as the verdict of a jury, and should not be set aside by an appellate tribunal unless clearly and manifestly against the weight of the evidence. Wood v. Price, 46 Ill. 435; Heyman v. Heyman, 210 Ill. 536.

It appears from the record that prior to the trial appellee interviewed a number of witnesses who had been subpœnaed by appellant, and exhibited to them what purported to be his signature to a number of checks, etc., with a view to convincing them that the signature to the note in suit was not genuine, and that in several instances the witness

was influenced thereby to alter his former opinion upon the question. Such witnesses were then called by appellee in his behalf, whereupon appellant, after the foregoing facts had been developed on cross-examination, moved to exclude their testimony upon the ground that their opinion was based upon a comparison of the signature in dispute with others not in evidence; that they had been tampered with, and that they were thereby rendered incompetent to testify. While the conduct of appellee is not to be approved, we do not think that the witnesses were thereby disqualified to testify. No misconduct on the part of the witnesses referred to, is shown, and their credibility was not necessarily affected thereby. The means adopted by appellee to induce a change of opinion merely tended to weaken the probative form of the testimony so obtained. Neither is the opinion of a witness in handwriting, with which he is familiar, who is competent to speak upon the subject, to be excluded because he has refreshed his recollection by the examination of genuine papers not in evidence, written by the person whose signature is in question, and is thereby enabled to speak with greater positiveness on the subject than he otherwise could have done; nor is the knowledge of the witness, derived from such examination or comparison made between genuine writings and the writing in controversy, to be excluded from consideration. Remington Paper Co. v. O'Dougherty, 81 N. Y. 474; Miller v. Coulter, 156 Ind. 290; Hoag v. Wright, 174 N. Y. 36.

Numerous other alleged errors of the court in ruling upon the admissibility of evidence are urged and argued. We shall not discuss or consider them further than to cite the well settled rule that where a cause is tried by the court without a jury, the admission of incompetent evidence will not be ground for reversal if there is enough evidence to sustain the finding. Palmer v. Britanna Co., 188 Ill. 508; Furnace Co. v. Elphicke, 200 Ill. 411. Such evidence as was incompetent may be presumed to have been disregarded by the trial court in arriving at his findings, and it follows that appellant could not have been prejudiced thereby.

Scottish Nat. Ins. Co. of America v. Adams.

While the rulings of the trial court upon various propositions of law held and refused, are assigned as error, counsel has failed to urge the same in his argument. They will therefore be treated as waived.

Inasmuch as it cannot be said that the finding of the court as to the facts is manifestly contrary to the evidence, and no prejudicial error of law having intervened on the trial, the judgment of the Circuit Court must be permitted to stand.

*Affirmed.*