## MARY C. PEDDICORD

### v.

## SECURITY LIVE STOCK INSURANCE COMPANY.

*Right of Property in a Horse—Trial of—Agreed Statement of Facts—Estoppel—Judgment—Surplusage.*

Upon appeal from a judgment rendered in a trial of the right of property in a horse held under execution, it is *held:* That a notice which was not on file at the commencement of the trial in the court below, can not be considered under the agreed statement of facts; that the claimant was estopped from setting up a claim to the horse in question; and that the part of the judgment awarding a *retorno* was surplusage and may be disregarded.

[Opinion filed November 18, 1887.]

APPEAL from the Circuit Court of Sangamon County; the Hon. J. A. CREIGHTON, Judge, presiding.

Messrs. H. A. STEVENS and STEPHEN FRENCH, for appellant.

Messrs. CONKLING & GROUT, for appellee.

CONGER, P. J.   The facts necessary to an understanding of this case are as follows, being principally contained in the following agreed statement of facts, viz.:

"Agreed statement of facts."

"It is agreed that this cause shall be tried upon the following statement of facts:   The stallion in controversy was out of a mare owned by claimant, and was never sold or given away by her.   Since he was a colt, A. M. Peddicord, husband of claimant, and residing with her, has handled and cared for him; and as between them the stallion belongs to claimant, acquired by her through other sources than her husband, A. M. Peddicord.

"In 1885, an agent of the defendant, supposing the horse to belong to A. M. Peddicord, on his application, stating 'Brigham' to be his horse, procured from defendant a pol-

icy of insurance on the horse as the property of A. M. Peddicord, he giving his note for the premium. Judgment was obtained against him on that note. When the policy was issued A. M. Peddicord took it home, and his wife, the claimant, saw it; knew how the insurance was taken, made no objections to the defendant or its agent, nor did she have the policy returned. But claimant refused permission to her husband to insure the horse before the policy was issued or applied for. After that the Peddicords came to Springfie'd and lived together here. A. M. Peddicord stood the horse at different places in Sangamon County, and had the exclusive care of him, the proceeds thereof going to the support of the family of the claimant. No public advertisements were ever made of who was the owner of the horse.

"Execution on this judgment against A. M. Peddicord was issued and delivered to S. M. Culver, Constable, who went to the house of claimant, who said A. M. Peddicord was absent. The Constable then asked claimant where A. M. Peddicord's horse was, and she told him in the barn. After looking at the horse, the Constable informed claimant that he had an execution against A. M. Peddicord, and was going to levy on the horse to satisfy it, and that he must remove the horse. Claimant did not then claim the horse as her property, or object to the levy, any further than that she did not want him taken to any other barn, saying he would be safe where he was. Culver took the horse and held him until taken on a forthcoming bond, when he gave up the horse to A. M. Peddicord on the delivery of the bond.

"On August 17th, the horse was delivered to Culver according to the terms of the bond. After trial in Justice Court, the horse was delivered to A. M. Peddicord, as agent for claimant, under bond, as provided for by statute, until the trial of this cause on appeal in this court. The bonds, execu_ tions referred to, and papers and notices on file in this cause, shall be considered in evidence if either party desires, subject to legal objections thereto by the parties."

The execution mentioned was levied upon the horse, August 3, 1886, and on the 5th of August, 1886, A. M. Ped-

dicord, as principal, with appellant, his wife, and one B. S. Graves as sureties, executed to the Constable an ordinary delivery bond, reciting that the execution had been levied upon the horse in question as the property of A. M. Peddicord.

On the 10th of August, 1886, appellant served a written notice upon the Constable that she claimed the horse as her property.

The notice in the record of date 4th August, 1886, can not be considered, as the bill of exceptions states that it was not on file at the commencement of the trial in the court below, and to such papers as were on file at the time of the making of the agreement as to facts, we think the words of the agreement, "on file in this cause," apply.

We think, under these circumstances, the appellant was estopped from setting up a claim to the horse in question. Leeper v. Hersman, 58 Ill. 218.

The part of the judgment awarding a *retorno* was erroneous but was mere surplusage and may be disregarded without in any way interfering with the validity of the judgment.

The judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*