Bissell, P. J.,
delivered the opinion of the court.
The chief inquiry here concerns the legal effect to be given to the. reseizure of goods by an officer, who has antecedently *151 surrendered them to the defendant on the execution of a delivery bond under the statute. In May, 1889, Wallingford commenced a suit against T. J. Matthews and Whiting, who were copartners, as he avers, under the name of T. J. Matthews & Go., to recover $1,289.92 as money due on a promissory note, and for the rent of certain property. He sued out an attachment in aid of his action, and the sheriff levied the writ on certain property in the possession of the firm, and belonging to one or both of the members. After the levy, the present appellants, Schneider and Torino, with Matthews executed a bond for the redelivery of the property, which as to all of its terms and conditions, conformed to the statute. The officer yielded possession, and the defendants in the suit, Matthews & Co., resumed the control of the property. The action proceeded to judgment, an execution was issued, and the sheriff, or one of his deputies, appears to have demanded the return of the property or the satisfaction of the judgment. The complaint in the present suit Stated that the property was not returned nor the judgment paid, — set up the bond and sought to compel the sureties to pay the judgment. The sureties answered in general denial, and also set up the specific defense that after the bond was executed other suits were commenced in the district court of Las Animas county in which writs of attachment were issued, and that thereunder the sheriff retook the property. The defendants, in the trial of the case, produced the writs of attachment and the records in those suits, and offered to show that the identical goods surrendered to the attachment defendants on the execution of the delivery bond had come into the possession of the officer who levied the original writ. The proof made by the defendants was meager, and their offer might, under some- circumstances, be held to be so narrow as not to preserve their rights; but a deputy sheriff named Hightower gave evidence for the plaintiff which established the fact that the great bulk of the property originally taken by the sheriff returned to his possession. The inventories made by the different officers were presented, *152 and they were accepted to be truthful lists of the property and accurate statements of its value. From them it appeared that the sheriff •originally took nearly three thousand dollars worth of property. The court rejected the proof offered by the defendants in this regard, refused to permit them to submit the case to the jury, and directed a verdict for the plaintiff for sixteen hundred and twenty-one dollars, the sum claimed.
The appellants argue many questions, but it would scarcely profit us to discuss the force and effect of a delivery bond, and determine to what extent its recitals are conclusive upon the sureties with reference to. the commencement of a suit, and the regularity of the attachment proceedings. These matters are well understood, and the court committed no errors with respect to its holdings on those subjects. An attack upon the judgment because of the failure of the entry to recite the confirmation of the attachment proceedings is not well based, for it has been decided in many cases that the attachment is never to be deemed abandoned becaus.e there is no recital in the judgment entry that the process is confirmed. New Haven Lumber Co. v. Raymond, 76 Iowa, 225.
The principal error on which the plaintiffs rely is set out, in different forms, in the seventh, eighth, and ninth assignments, and is based on the effect of the acceptance of a delivery bond by an officer after a seizure of chattels. The legal results flowing from the execution and acceptance of a delivery bond and the surrender of the property have been the subject of very conflicting adjudications. Authors who have written upon the subject of attachments are also at variance in their views upon this question. But within our jurisdiction the question has been set at rest by the well-considered case of Stevenson v. Palmer, 14 Colo. 565.
In that case Mr. Justice Hayt reviews the authorities, discusses the reasons of the conflicting rules, and ultimately reaches the conclusion that the execution of the bond and the surrender of the property do not destroy the lien of the *153 attachment. The court holds that the lien cannot he divested by a sale of the property by the attachment defendant, nor by a seizure and disposition of it by an officer under process. It is held to continue until judgment, and if the plaintiff’s claim is ultimately put into judgment, and an execution issued for its enforcement, the property will be treated as still in the custody of the law, and subject to that lien. If this be true, it follows that if, after the surrender of the property to the defendant, the officer seizes the goods under other writs, whether of attachment or execution, it thereupon becomes subject to disposition under this senior lien, which has been acquired by the levy, and the officer is charged with the duty of applying the proceeds of any sale of it to the satisfaction of this claim. Joslin v. Spangler, 13 Colo. 491; Speelman v. Chaffee, 5 Colo. 247.
What the evidence might have shown concerning the disposition of this property, and whether the plaintiff would have been able to overcome the proof, which tended to show that possession of the goods had repassed to the sheriff, to whom the creditor was bound to look for his money, cannot be determined from the present record. It is quite possible that the evidence on this subject may seriously affect the relations and rights of the judgment creditor, the officer, and these sureties. According to the case as made, however,' sufficient of these goods repassed into the officer’s possession to satisfy Wallingford’s claim. Should the ultimate proof establish this fact to the satisfaction of the jury trying the case, and the-evidence show that the goods were sold by the officer, or otherwise so disposed of that they were lost to the defendant and the judgment creditor, the legal effect must be to satisfy the debt, and to compel the creditor to look to the officer alone for the satisfaction of his claim. Under such circumstances, it would not be possible, by these proceedings, to revive the liability of the sureties, from which they were relieved when the condition of their bond was complied with by the resumption of possession by the sheriff. It clearly appears from the record that all the goods were not reseized *154 by the officer, but that does not operate to the disadvantage of the sureties. While the condition of their bond is either to redeliver the property, or to pay the amount of the judgment, the measure of the recovery against them is always the value of enough of the goods to satisfy the judgment, and not more. Drake, Attachm. § 342; Stevenson v. Palmer, supra. It is manifest that many questions are liable to arise on a subsequent trial concerning the identity of the property and the sufficiency of the proof to show such a resumption of possession as will entitle the sureties to insist on the application of the principle stated. We are only able to say that there is enough in the record to show that the appellants were entitled to be heard, and to go to the jury, upon these matters. Since the court erred in directing a verdict for the plaintiff, the judgment must be reversed, and the case remanded.

Reversed.