Thomson, J.,
specially concurring.
I agree with my brother Wilson that this judgment should be reversed. I am not, however, prepared to yield a full assent to his construction of the statute. The supreme court, in Stevenson v. Palmer, 14 Colo. 565, held that personal property attached was not discharged from the lien of the attachment by the giving of a redelivery undertaking in pursuance of the terms of section 2015 of the General Statutes. That section occurs in the act regulating proceedings in justices’ courts. In Schneider v. Wallingford, 4 Colo. App. 150, where, as in the case at bar, the undertaking was given pursuant to the provisions of sections 111 and 112 of the code, this court reached a like conclusion. Now, while it is conceded that the supreme court decision fixes the law, in so far as attachments issued from justices’ courts are concerned, yet, it is argued that on account of a difference in phraseology between the provisions of the justice’s act and those of the code, the rule applicable in the two classes of cases is not the same; and that in applying the decision in a case which arose under the justice’s act, to one arising under the code, *62 this court erred. If the question of the purpose of a redelivery undertaking in attachment were now to be determined for the first time, I should hesitate before disagreeing with my associate in his construction of the code provisions; but this court is bound by the decision of the supreme court; and, unless, in relation to the question undér consideration, the differences between the justice’s act and the code are such as to render the effect of the one different from that of the other, we committed no error in following that decision. That the language of the two is not identical, or that in matters of detail, the one is more specific than the other, is not enough. If the meaning to be gathered from each is the same, the same rule must be applied to both. A comparison of the enactments will exhibit their resemblances and differences, and so lead to a just solution of the question. The following is section 2015 of the General Statutes :
“ The defendant may, at any time before final judgment in the action, release all property which may have been seized by virtue of the attachment writ, by his executing an undertaking as hereinafter provided. Such undertaking shall be given by the defendant to the plaintiff, be signed by two responsible sureties, each a resident of the county in which the suit is pending, and shall be to the effect that in case the plaintiff recover judgment against the defendant in the action, and the attachment is not dissolved, the defendant will deliver to the constable all property which has been seized by him by virtue of the attachment writ, or, on failure so to do, will pay to the plaintiff the full value of the property attached, not exceeding the amount of the judgment and costs recovered in the action.”
The code provisions referred to are as follows :
“ Sec. 111. The defendant may at any time release any property in the hands of the sheriff by virtue of any writ of attachment, by executing an undertaking as provided for in the next section, and all the proceeds of sales and money collected by the sheriff, and all the property attached remaining in his hands, shall be released from the attachment and de *63 livered to the defendant upon the justification of the sureties in the undertaking.
“Sec. 112. Before releasing such attached property, as aforesaid, to the defendant, the sheriff shall require an undertaking executed by the defendant to the plaintiff, and at least two sureties, residents and freeholders, or householders, in this state, to the effect that in case the plaintiff recover judgment in the action, and the attachment is not dissolved, defendant will on demand, redeliver such attached property so released, to the proper officer, to be applied to the payment of the judgment, and that in default thereof the defendant and sureties will pay to the plaintiff the full value of the property so released.”
Both the enactments provide for the release of the attached property, upon the execution of an undertaking by the defendant to the plaintiff. The undertaking in each case is conditioned that if judgment be recovered by the plaintiff, and the attachment be not dissolved, the defendant will deliver the property to the proper officer, or pay the plaintiff its full value. To this extent the enactments are substantially alike. But language is found in the code sections which does not occur in the justice’s act, and it is to be seen how the meaning of those sections is affected by the presence of that language. Code section 111 provides that upon the justification of the sureties in the undertaking, all the proceeds of sales and money collected by the sheriff, and all the property attached remaining in his hands shall be released from the attachment and delivered to the defendant. The justice’s act simply provides that the property which has been attached shall be released. It does not say that it shall be released from the attachment, and the specification in the code, not contained in the other enactment, that the release shall be from the attachment, seems to be regarded as indicative of an intention by the legislature to give an undertaking, executed under the provisions of the code, an effect not contemplated in the justice’s act. It is said that if the release from the attachment is, not a release from the lien of the attachment, the *64 words “ from the attachment ” are useless, and might as well have been omitted. I do not think the words useless, but I think they express merely what would necessarily be understood without them. The justice’s .enactment provides only that the property which has been attached shall be released. But from what shall it be released ? It has been seized by the constable, and is in his possession. The attachment of personal property, capable of manual delivery, consists in taking it into custody. Gen. Stats, sec. 2007; Civil Code, sec. 104. By the release, the officer relinquishes the possession, and turns it over to the defendant. As the officer attaches the property by taking it into his custody, a release from that custody is a release from the attachment; so that respecting the effect of the release, the code provisions and the justice’s act are the same. The code merely expresses in words what the other implies.
But it is insisted that another reason for a difference in the construction of the two enactments is found in the provision of the code, not contained in the justice’s act, that upon the giving of the undertaking, all the proceeds of sales and money collected by the sheriff, shall, along with the property remaining in his hands, be released from the attachment, and delivered to the defendant. It is argued that the lien could not follow the money; that as the money and the property are released together, their situation is the same, and, that as the lien would not follow the money, it could not have been intended that it should follow the property. Code section 107 provides for the sale, before judgment, of property of a perishable nature, the proceeds to be held by the officer to answer the judgment. This is the money referred to in code section 111. The justice’s enactment contains no such provision. But, as a matter of logic, it does not follow that because the lien upon a portion of the property may be lost, it is divested as to the remainder. Let it be supposed that the code contained no provision for the sale of property before judgment, just as the justice’s act does not, and let it further be supposed that part of the property *65 attached should actually perish in the hands of the sheriff, then, as to that part, the lien would he defeated, but no one would seriously contend that the destruction of a portion of the property would injuriously affect the plaintiff’s rights in the residue. Now, that a sale should have an effect which an absolute loss would not, must be predicated upon some reason which has thus far escaped my observation.
Sections 108 and 109 of the code provide that after judgment recovered by the plaintiff, the sheriff shall proceed to satisfy the same out of the property attached by him, which has not been delivered to the defendant; and that if, after selling all the property attached by him remaining in his hands, any balance shall remain due, he shall proceed to collect such balance as upon execution in other cases. It is said that these provisions show a clear intent not to subject the property, which has been released, to the attachment. But in the justice’s act (section 2013, Gen. Stats.) it is provided that if judgment be recovered by a plaintiff, the justice shall issue an order of sale to the constable, directing him to satisfy such judgment out of the proceeds of the sale of the property attached by him, and that in case the property attached be not sufficient to satisfy such judgment, then the justice shall issue an execution as in other cases. It is true that this section does not, in terms, direct the satisfaction of the judgment out of property attached which has not been delivered to the defendant, and, in this respect, it differs from the code. But to find what it means reference must be had to the sections which precede it. The subject of those sections is property which has been attached by the constable, and which has not been delivered to the defendant. That is the property, and the only property, which is spoken of prior to section 2013, and is therefore the property of which it speaks. It is not until afterwards that provision is made for a redelivery undertaking. Therefore, in so far as the question now under consideration is concerned, the effect of section 2013 of the General Statutes, and *66 the effect of sections 108 and 109 of the code, are the same. In my opinion while the code provision and the justice’s enactment differ in their language, there is no difference in their purport; the lien acquired by virtue of one is coextensive with the lien acquired by virtue of the other; the same rule of decision should be applied to both, and because the supreme court has decided that the giving of a redelivery undertaking in a suit before a justice of the peace, does not divest the lien of the attachment, it must be held that the lien of an attachment issued by a court of record remains, notwithstanding the giving of the undertaking provided for in the code.
But while I am of the opinion that the execution of the forthcoming bond does not divest the lien of the attachment, I am also of the opinion that the lien binds the property only as against the attachment defendant, and persons standing in his shoes. One purchasing with actual notice of the lien, or one claiming an interest in the property for which he had parted with no value, would perhaps, be entitled to no more consideration than the defendant himself. But I do not believe that the lien can be asserted against a purchaser who has no notice of its existence, and here I am in full accord with my learned associate, Judge Wilson. In Stevenson v. Palmer, the property attached had been released by the giving of a redelivery bond, and had afterwards been levied upon by virtue of a writ in another suit. The court held that the property was still subject to the lien of the first attachment, saying that it would be a fraud upon the sureties to allow it to be subjected to execution issued at the suit of other parties. In Schneider v. Wallingford, the controversy was between prior and subsequent attaching creditors. In neither case was the question of the rights of an innocent purchaser involved. In so far as personal property is concerned, an attaching creditor takes his chances upon the title, and if it turns out that there is outstanding a prior and superior right in the property, he sustains no loss. His position is no worse than it was before. His attachment, therefore, operates only upon the title which *67 the defendant actually has at the time, and he must submit to the lien of a prior attachment, whether he has notice of its existence or not. Gates Iron Works v. Cohen, 7. Colo. App. 341. But the situation of an innocent purchaser is altogether different. He parts with his money on the faith of an apparent title, and if he is deprived of the property by means of some invisible claim, of the existence of which he had nothing to advise him, he suffers serious hardship. The law has in view the encouragement of trade. A doctrine which would render traffic perilous, and overshadow purchasers with a constant danger, from some unknown source, of losing their acquisitions, would be repugnant to enlightened policy. A person desiring to purchase real estate can readily ascertain whether it is subject to the lien of an attachment by inquiring at the office of the recorder of the county in which the land lies. Civil Code, sec. 104. A mortgage of personalty must be recorded with the recorder of the county in which the property is situated, to be of any effect against purchasers without actual notice. 1 Mills’ Ann. Stat. sec. 385. And generally, our lawmakers seem to have been careful to provide means whereby parties desiring to become interested in property, may ascertain whether it is incumbered by a lien. But there is no provision for giving notice to the world of the lien of an attachment of personal property. Constructive notice is something of statutory creation, and there is no constructive notice, unless it is authorized by statute. Bank v. Davidson, 7 Colo. 91. If a purchaser of attached property has not actual notice of the attachment, or of facts which would charge him with such notice, he has no notice at all. A writ of attachment issues from one county, and is levied in another and remote county; it is then returned to the county from which it came; the defendant executes the proper undertaking, which also goes to the county of the writ; the property is returned to him; the appearances all are that he has a perfect right to deal in the property as he chooses, and a purchaser has no knowledge or means of knowledge that another human being, outside of the defend *68 ant, has any claim upon it. The law has designated no place at which he may inquire. He knows where to go to find whether it has been mortgaged, because the statute informs him; but he does not know where to go to find whether it has been attached, because the statute does not inform him. It is contrary to the policy of the law, as well as natural justice, that a purchaser of property should be at the mercy of a secret claim; and if it had been the intention that the lien of an attachment should follow personal property into the hands of a purchaser, provision would have been made for constructive notice of the lien.
But the plaintiff is not hurt by his inability to take the property from the purchaser. He is amply protected by the redelivery undertaking. The sureties are bound for the production of the property to answer his judgment, and if it is not forthcoming, they must pay him its value. And there are no equities in their favor. They executed the bond voluntarily, and by its execution, they put it into the power of the defendant to dispose of the property. The appearance of right, with which he was clothed, to deal with it as he pleased, was due to them, and as between them and a person who is led by a situation which they created, and in innocent reliance upon a title to which they have been instrumental in giving an appearance of validity invests his money in the property, the loss must be borne by them.
In this opinion I have used the word “purchaser” throughout, but the rights of a mortgagee are the same as those of a purchaser, and under the facts as they are disclosed bjr the record, in my opinion the appellant is entitled to the possession of the property.